Richard H. Greener (ISB No. 1191)
*rgreener@greenerlaw.com*
Erik F. Stidham (ISB No. 5483)
*estidham@greenerlaw.com*
Scott E. Randolph (ISB No. 6768)
*srandolph@greenerlaw.com*
GREENER BANDUCCI SHOEMAKER P.A.
950 W. Bannock Street, Suite 900
Boise, Idaho 83702
Telephone (208) 319-2600
Facsimile  (208) 319-2601

Attorneys for Plaintiff

---

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PETER W. CANDY, an  individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>474 CLUB LLC, a Tennessee limited liability company; LOCALLY GLOBAL INVESTMENTS, LLC, Tennessee limited liability company; FLETCHER WHITE, an individual; JOHN LAMBERSON an individual; KEVIN ADAMS an individual; WILLIAM BENTON, an individual; EDWARD LABRIE, an individual; and JOHN DOES 1 through 5,<br><br>　　　　Defendants. | Case No. 06-0400-S-EJL<br><br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

COMES NOW Plaintiff Peter W. Candy ("Plaintiff"), and hereby alleges the following

claims and causes of action against Defendant 474 Club LLC ("474 Club"), Fletcher White

---

FIRST AMENDED COMPLAINT AND JURY DEMAND – PAGE 1
18617-001  176924_5

("White"), John Lamberson ("Lamberson"), Kevin Adams ("Adams"), William Benton

("Benton"), and Edward Labrie ("Labrie") (hereinafter collectively referred to as "Defendants").

## THE PARTIES

1.      Plaintiff Peter W. Candy is an individual in the business of construction

management and development and is a resident of Blaine County, Idaho.

2.      Defendant 474 Club is a Tennessee limited liability company with its principal

place of business in Memphis, Tennessee.

3.      Defendant Fletcher White is an individual and a resident of the State of Idaho.

4.      Defendant John Lamberson is an individual and a resident of the State of

Tennessee.

5.      Defendant Kevin Adams is an individual and a resident of the State of Tennessee

and a partner or principal of Defendant 474 Club.

6.      William Benton is an individual and a resident of the State of Tennessee and a

partner and principal in the 474 Club.

7.      Edward Labrie is an individual and a residence of the State of Tennessee and a

partner and principal in the 474 Club.

8.      Defendants John Does 1 through 5 are persons or entities whose true names are

unknown and whose acts or omissions contributed to the events and damages complained of

herein.

9.      In doing the things alleged in this Amended Complaint, each of the Defendants

was acting as an agent of the other or, in the alternative, was acting as a co-conspirator of the

other or, in the alternative, was acting as a member of a joint venture with the other Defendants.

## THE FACTS

10.     On or about June 15, 2004 and August 14, 2004, Plaintiff entered into two contracts to purchase parcels of real estate (collectively, the "Purchase Contracts") located in Hailey, Idaho, from Woodside Developers, known as the "Woodside Subdivision" ("Woodside"). Plaintiff's purpose in entering into the Purchase Contracts was to develop the subject property into some 400 homes for the residents of Hailey and Blaine County (hereinafter referred to as the "Woodside Development"). In October and November 2004, Plaintiff negotiated with Wayne Roth, a builder in Blaine County, to act as the contractor for Woodside. Plaintiff and Wayne Roth agreed to work together on the Woodside Development.

11.     When Plaintiff entered into the Purchase Contracts, the Woodside Development property was zoned "GR," "B," and "LB." In order to make the project feasible, this zoning had to be changed by applying to the City of Hailey for rezoning and the park allocation had to be altered. At Plaintiff's direction, Woodside Developers pursued these changes with the City of Hailey, and on January 10, 2005, the City of Hailey executed a "Development Agreement" pertaining to the rezoning of the Woodside Development property which effected the necessary changes.

12.     In order to develop the property, Plaintiff had to engage investors who would finance the development after Plaintiff successfully had the Woodside Development rezoned and resolved the park allocation issue.

13.     In December 2005, Defendant White entered into discussions with Jason Roth, Wayne Roth's son, regarding the Woodside Development. Jason Roth was authorized by Plaintiff to discuss the Woodside Development with White. Defendant White represented that he could obtain investors for Plaintiff and the Woodside Development property. White represented

that he would be willing to obtain investors in exchange for compensation from the transaction. White represented that he would obtain suitable investors who were willing and able to partner with Plaintiff to complete the Woodside Development. During these discussions, White represented that he would locate investors who would agree to share profits from the Woodside Development. White made these representations to Jason Roth, with intention and understanding that the representations would be repeated to Plaintiff. The representations were repeated to Plaintiff. White intended that Plaintiff rely on these representations.

14.     In December, Jason Roth and Defendant White agreed that White and Jason Roth would perform services as consultants for Plaintiff. In exchange for his work, Defendant White was to be paid $150,000 at closing. Defendant White falsely represented that he would perform services for Plaintiff, as a consultant. Plaintiff authorized White to seek investors for the Woodside Development.

15.     Based on the facts alleged, Plaintiff placed White in a position of trust or confidence. White was in a position of superior knowledge to Plaintiff regarding potential investors, the potential investors' true motives, and which potential investors had the means, interest and ability to complete the Woodside Project pursuant to Plaintiff's terms.

16.     On or about January 1, 2005, White represented that he had engaged with a group of investors for the Woodside Development. White represented that these investors were willing to do the project pursuant to Plaintiff's terms. Prior to the introduction from White, Plaintiff did not have any contact with these investors. At the direction of White, Plaintiff sent information to Benton, a principal and partner of Defendant 474 Club, and White, an agent and representative of those Defendants, including a project summary profile which described the development both financially and physically.

17. Defendants 474 Club, Adams, Benton, Labrie, White, and Lamberson determined to engage in a plan to mislead and defraud Plaintiff out of his rights and interests related to the Woodside Development Property. Pursuant to this scheme, Defendants 474 Club, Adams, Benton, and Labrie directed Defendants White and Lamberson to mislead Plaintiff into believing that an agreement was in place pursuant to which he was entitled to an agreed-upon split of remaining cash flow from the project and was to receive fees for performance of project administrative services and to mislead Plaintiff that the 474 Club was going to provide required funding in accordance with deadlines currently in place.

18. In furtherance of this scheme, Defendants White, Lamberson, Labrie, Benton, and Adams were acting outside the scope of their duties and were acting for their own personal gain.

19. Pursuant to this wrongful scheme, Lamberson and White, along with Defendants 474 Club, Adams, Benton, and Labrie, were to represent to, did represent to, and conspired to represent to Plaintiff that an agreement was in place whereby he was to receive the agreed split of the revenue and would receive the agreed compensation as project administrator.

20. Defendants Lamberson and White agreed to take and did take these wrongful actions in order to directly receive benefit. Defendant Lamberson was to receive payment from Defendant 474 Club. Defendant White was to receive compensation from amounts paid at closing or through other compensation from Defendants 474 Club, Adams, Labrie, and Benton.

21. From the outset, Defendants knew and understood that the representations and assurances would be false. Defendants never intended to fulfill the representations and assurances that were to be made to Plaintiff. Defendants knew and understood that the objective of their wrongful acts was property located within Idaho and knew that the individual who was to be wronged was an Idaho resident.

22.     Defendants Adams, Benton, Labrie, and 474 Club took actions to mislead Plaintiff that an agreement was in place and that 474 Club was committed and able to provide funding for the Woodside Development project.  Defendants Adams, Benton, Labrie, and 474 Club directed White and Lamberson to assure Plaintiff that an agreement was in place and that Plaintiff was to get the agreed percentage of revenue and compensation as project administrator. Despite the representations and assurances, Defendants never intended to proceed according to the terms that were to be represented to Plaintiff.

23.     Prior to misrepresentations and concealments by Defendants, Plaintiff also pursued other investors from more than one source, including Laurie Maher, the real estate broker who had originally presented the Woodside Development opportunity to Plaintiff and who was the broker for Plaintiff on the Purchase Contracts.

24.     On or about February 3, 2005, and because the City of Hailey had executed the Development Agreement, Plaintiff as buyer and Woodside Developers as seller entered into "Addendum #4" to the Purchase Contracts, which gave Plaintiff until March 23, 2005 in which to deposit "Earnest Money" for the Woodside Development property.  If the Earnest Money was not deposited, the Purchase Contracts would be cancelled.

25.     Between January and February 2005, Defendant White arranged for communications and meetings betwween Plaintiff and Defendant Lamberson.  In this manner, White connected Plaintiff with Lamberson in furtherance of a plan to wrongfully obtain property rights from Plaintiff.  Defendant White falsely represented, indirectly and directly, to Plaintiff that Defendant Lamberson was a financial analyst for an investment group who had authority to contract on behalf of the investment group.  Defendant Lamberson engaged in several conversations with Plaintiff about the Woodside Development, falsely representing himself to be

the financial analyst for an investment group and to have the authority to contract on behalf of those Defendants.  The investment group was later revealed to be Defendant 474 Club.

26.     Defendant Lamberson directed that the project study be broken into phases, which Plaintiff did in a cash flow study dated February 1, 2005 (the "February 1 Cash Flow Study") and forwarded to Lamberson on or about that date.  Plaintiff informed Lamberson that the Earnest Money had to be deposited by March 23, 2005.

27.     In mid-February 2005, during a telephone call, Lamberson represented that the 474 Club would agree to finance the Woodside Development in exchange for a twenty-five percent (25%) preferred return compounded annually to the 474 Club on its invested capital and, after payment of the preferred return and a full return of the 474 Club's invested capital, a 75/25 split of the remaining cash flow from the project, seventy-five percent (75%) to the 474 Club and 25% to Plaintiff and Wayne Roth (the "Operating Agreement").  Lamberson further stated that Plaintiff would be the Woodside Development project administrator and that Wayne Roth would be the construction manager, each to receive monthly fees for the performance of these services. Plaintiff and Wayne Roth agreed to the terms proposed by Lamberson.  Lamberson represented that they had an agreement.  The parties had an agreement to work together, pursuant to the terms alleged, for the purpose of developing the Woodside Development.  At the time these representations were made, Lamberson knew them to be false but concealed that fact from Plaintiff.

28.     Defendants 474 Club, Adams, Labrie, and Benton directed and authorized Lamberson to make these representations.  These false representations were made in furtherance of Defendants' plan to wrongfully acquire Plaintiff's property rights.  At the time these representations were made, Defendant White knew them to be false but concealed the truth from

Plaintiff. At the time these representations were made, Defendants Adams, Labrie, and Benton knew them to be false.

29.   Defendants intended that the false representations and the concealment of Defendants' true intentions would cause Plaintiff to act in reliance on the agreement. Lamberson and the 474 Club entered into the Operating Agreement with the intent to forestall Plaintiff's action and to induce reliance. Defendants never intended to live up to the Operating Agreement. Among other things, Defendants intended that Plaintiff would believe that an agreement and commitment was in place such that Plaintiff would not solicit or entertain proposals from other parties.

30.   Plaintiff and Defendant 474 Club reached an agreement to work together for the purpose of developing the Woodside Development.

31.   Promptly after the Operating Agreement was reached, and in furtherance of the agreement to develop the Woodside Development, Plaintiff and Roth met with Ed Lawson, an attorney in Ketchum, Idaho, to memorialize the Operating Agreement. Lawson prepared a draft; on information and belief, after review by Plaintiff and Roth, Lawson forwarded the draft to Defendants Lamberson, White, and the 474 Club. The draft was forwarded to Defendants for the purpose of memorializing the terms of the Operating Agreement. Defendants did not promptly object to the terms as set forth in the draft. Defendants concealed the fact that they intended to renege on the terms of the Operating Agreement. Defendants intended that Plaintiff rely on this concealment.

32.   Plaintiff relied on the concealment to his detriment. Plaintiff failed to pursue other investors for the Woodside Properties.

33.     Based on the representations by Defendants, Wayne Roth and Plaintiff reached an agreement regarding sharing the construction management fees from the Woodside Development.  Defendants' wrongful acts caused Plaintiff to lose the benefit of this agreement.

34.     Based on the Operating Agreement, which included an agreement to share profits, Plaintiff entered into a relationship of trust and confidence with Defendants 474 Club, Lamberson, Benton, Labrie, and Adams.

35.     Despite the fact that the parties had reached an agreement in February, in early March, Lamberson stated that he wanted to inspect Woodside and that deposit of the Earnest Money by the Defendants could not be made until after the inspection.  Defendants, including Lamberson, never told Plaintiff that the Operating Agreement was not in place.  Defendants 474 Club, Adams, Benton, and Labrie directed Lamberson to induce the Plaintiff's reliance and belief that the Operating Agreement was in place and in force.

36.     On March 18, 2005, Plaintiff obtained an extension for the deposit and release of the Earnest Money to April 6, 2005.

37.     Between February and March, 2005, Plaintiff was contacted by Laurie Maher, Plaintiff's real estate broker for Woodside, who advised that a representative from a Washington real estate investment trust (the "Washington Investor") had looked at Woodside and discussed it with Maher.  The Washington Investor was interested in Woodside, and Maher asked Plaintiff whether he would consider this alternative.  In reliance on the Operating Agreement, Defendants' actions, Defendants' representations, and Defendants' failure to object to the draft prepared by Lawson, Plaintiff indicated to Maher that he had an arrangement with Defendants and would not pursue the matter.  Despite this, Maher pursued the Washington Investor, who advised they were in a position to work quickly to close a deal and were prepared to come to

Hailey in order to meet with Plaintiff and make an offer.  Plaintiff again declined this opportunity in reliance on Defendants' representations concerning an entry into the Operating Agreement.  But for the wrongful acts of Defendants, Plaintiff would have reached an agreement with other investors.

38.     Lamberson represented he would come to Hailey on March 19, 2005, to inspect the Woodside project.  On March 19, 2005, Defendant White telephoned Roth and represented that because of equipment problems with an airplane in Atlanta, the airline had had to change to a smaller plane and Lamberson was unable to obtain a seat so he elected to return to Memphis rather than make other arrangements to perform the promised inspection.  Plaintiff believes and alleges that Lamberson misrepresented his inability to travel to Hailey, and White continued to conceal the fact that Defendants did not intend to live up to the terms of the Operating Agreement.

39.     The Earnest Money was still required to be deposited and released by April 6, 2005.  Prior to April 4, 2005, Defendants Lamberson and White falsely represented and assured Plaintiff that the April 6, 2005 deadline could be met.  Lamberson finally arrived in Hailey, with White, on April 4, 2005.  Plaintiff and Roth met with Defendants Lamberson and White.  Plaintiff and Roth then took Lamberson and White on a tour of Woodside and the surrounding area, in addition to showing them Roth's most recent construction project in Warm Springs.  Before leaving on the afternoon of April 4, 2005, Lamberson asked Plaintiff to obtain a Phase I Environmental Study and arrange for a survey of the Woodside property.  At this meeting, Lamberson again falsely represented to Plaintiff that the Operating Agreement was in place, that Plaintiff had a deal with the 474 Club, and that Defendant 474 Club would provide the necessary funds by the April 6, 2005 deadline.

40.     Defendants 474 Club, Adams, Labrie, and Benton directed Lamberson to falsely represent to Plaintiff that the Operating Agreement was in place and that Defendant 474 Club would provide the required funds by April 6, 2005. White knew that the representations by Lamberson were false but concealed that fact from Plaintiff.

41.     As directed by Lamberson, and in reliance on the Operating Agreement, Plaintiff obtained a copy of a Phase I Environmental Study already performed by another party, for which Plaintiff paid $2,400.00.

42.     On April 5, 2005, Lamberson telephoned and represented that the 474 Club could not get the needed funds together by April 6, 2005. Lamberson demanded that Plaintiff obtain another extension for the deposit and release of the Earnest Money. Lamberson represented that a two-week extension was required to get the needed funds together. Lamberson again represented that the Operating Agreement was in place and that the necessary funds would be provided in two weeks.

43.     Wayne Roth, on behalf of himself and Plaintiff, telephoned Woodside Developers and asked for a two-week extension on the Earnest Money. Woodside Developers would agree to the extension only in exchange for a payment of $100,000.00, not to be credited against the purchase price and to be disbursed to the seller upon deposit. Woodside Developers gave Plaintiff until April 7, 2005 to deposit the $100,000.00 payment.

44.     Despite the fact that the Defendants had entered into the Operating Agreement and reaffirmed the Operating Agreement on more than one occasion, on or about April 6, 2005, Defendants, through Lamberson, now demanded that Plaintiff and Wayne Roth fund $50,000.00 of the $100,000.00 payment, despite the fact that the payment was the result of the Defendants' delay in depositing the Earnest Money. Defendants, as part of their conspiracy, acting through

Lamberson, falsely represented that Defendant 474 Club would deposit a payment of $50,000.00.

Plaintiff and Wayne Roth had no choice but to agree to the split.

45.     On April 7, 2005, Plaintiff and Wayne Roth deposited $50,000.00 of the

$100,000.00 payment for the extension.

46.     Rather than depositing $50,000.00, as represented and promised, Lamberson

telephoned Plaintiff and demanded that Plaintiff execute an assignment of his interest in the

Woodside escrows and Purchase Contracts to Defendant 474 Club or the money would not be

wired to the escrow agent.  Lamberson again falsely represented that the Operating Agreement

was in place and a written agreement to that effect would be signed.  In reliance on the

Defendants' representations regarding the Operating Agreement, and under the duress of this

demand being made the morning the payment was required to prevent failure of the entire

project, Plaintiff provided an assignment on April 7, 2005.

47.     Defendants wire transferred their $50,000.00 share of the extension payment to

the escrow.  The deposit of the Earnest Money was extended to April 22, 2005.

48.     Defendant Adams arrived in Hailey on April 14, 2005.  After taking a tour of the

Woodside project, Adams represented that he approved of the project and was enthusiastic about

it.  At this point, neither Adams nor anyone else with Defendant 474 Club ever stated that the

terms of the Operating Agreement needed to be modified, concealing from Plaintiff their intent

to impose onerous and one-sided terms now that Plaintiff had been induced and forced to execute

the assignment.

49.     On or about April 16, 2005, Defendant Adams met with Plaintiff in attorney Ed

Lawson's office to have a conference call with Phillip Jones, the attorney for Defendant 474

Club.  During this discussion, it was agreed that the project administration/construction

FIRST AMENDED COMPLAINT AND JURY DEMAND – PAGE 12
18617-001  176924_5

management fees would be $8,000.00 per month (which Plaintiff and Roth agreed to split evenly). At this meeting, Adams stated that Jones would revise the draft of the Operating Agreement which had been done by attorney Lawson. This was the first time that Defendants indicated they would not be proceeding with the draft prepared by Lawson that was circulated in February 2005. There was no indication that attorney Jones would be modifying material terms of the Operating Agreement.

50.     On April 22, 2005, Defendants deposited the Earnest Money into the escrow.

51.     Between April and May 2005, in reliance on Defendants' false representations and deceptive actions as previously alleged, and pursuant to the Operating Agreement, Plaintiff performed various project administration duties for Defendants, including arranging a survey and dealing with issues related to the fact that part of Woodside was in a flood plain.

52.     On May 31, 2005, Plaintiff reviewed the draft Jones had finally sent and found it was contrary to the Operating Agreement that had been struck three months earlier. Jones's "draft" did not actually memorialize the Operating Agreement, but rather included onerous terms which would allow Defendants to terminate Plaintiff and essentially cause him to forfeit any interest in Woodside, including the interest in the cash flow.

53.     In the first week in June 2005, the escrow on Woodside was set to close. The Escrow Agreement included a $75,000.00 development/consulting fee to Plaintiff, a $75,000.00 development/consulting fee to Roth, a $150,000.00 consulting fee to Jason Roth, and a three percent (3%) commission to Laurie Maher, Plaintiff's real estate broker. Defendant 474 Club compensated Defendant White for White's work on the Woodside Development. Defendants demanded that Plaintiff and Roth forego these fees, despite the fact that the fees to Plaintiff and Roth were specifically itemized in the February 1, 2005 Cash Flow Study Plaintiff had delivered

to Defendants. Prior to this, Defendants had not raised any objection to the fees. Prior to this, White had falsely represented that Defendant 474 Club had approved the payments as indicated in the escrow agreements and case flow studies. Plaintiff refused to forego his fee.

54.     Between June and August 22, 2005, Defendants refused to revise the Jones draft to reflect the terms of the Operating Agreement. Plaintiff continued performing his responsibilities as project administrator, including meetings with civil and hydrology engineers, architects and land planners, landscape architects, and City of Hailey officials.

55.     On August 10, 2005, Defendants Adams and Benton arrived in Blaine County. Between August 10-12, 2005, Defendants Adams, Benton, and White conducted meetings in Blaine County. Defendants Adams, Benton, and White met in furtherance of their conspiracy against Plaintiff.

56.     On August 23, 2005, Defendant White telephoned Plaintiff to inform him that his "services would no longer be needed," despite the fact that Plaintiff had an agreement with respect to project administration and the Operating Agreement.

57.     Defendants have continued to refuse to allow Plaintiff to work as project administrator or to acknowledge Plaintiff's rights under the Operating Agreement.

58.     Defendants coerced Plaintiff to assign his interest in the Woodside Development to Defendants with no intent of subsequently jointly developing the property with Plaintiff. In doing the things alleged herein, Defendants have acted in accordance with an agreement between them, for individual benefit as well as for the benefit of the common scheme, to accomplish an unlawful objective of defrauding Plaintiff of his interest in the Woodside property and to tortiously obtain benefits and enrichment to which they are not entitled.

59.     Defendants, and each of them, contributed assets and labor to a scheme designed to deprive Plaintiff out of his interest in the Woodside Development and further cause Plaintiff damages as described herein.

60.     Defendants, and each of them, engaged in a common undertaking and had a joint interest in the scheme designed to deprive Plaintiff out of his interest in the Woodside Development and further cause Plaintiff damages as described herein.

61.     Plaintiff believes and therefore alleges that Defendants, and each of them, had a right of mutual control over the scheme designed to deprive Plaintiff out of his interest in the Woodside Development and further cause Plaintiff damages as described herein.

62.     Defendants, and each of them, had an expectation of profits in the scheme designed to deprive Plaintiff out of his interest in the Woodside Development and further cause Plaintiff damages as described herein.

63.     Plaintiff believes and therefore alleges that Defendants, and each of them, had a right to participate in profits in the scheme designed to deprive Plaintiff out of his interest in the Woodside Development and further cause Plaintiff damages as described herein.

64.     Defendants' objectives, and each of their objectives, were limited to a single enterprise, as alleged herein.

**COUNT ONE**
**Fraudulent Misrepresentation/Concealment**
**(All Defendants)**

65.     Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

66.     Defendants made numerous representations to Plaintiff that were false, including those previously alleged which include but are not limited to the following:

    (a)     That Defendant 474 Club intended Plaintiff to jointly develop Woodside with the Defendants;

    (b)     That Plaintiff would serve as the project administrator for the Woodside Development Project throughout the entire course of development;

    (c)     That Plaintiff would be compensated $4,000 per month for his services for the duration of the Woodside Development;

    (d)     That Plaintiff would serve as the construction manager for the Woodside Development Project throughout the entire course of the development;

    (e)     That Plaintiff would receive the agreed-upon percentage of cash flow from the Project; and

    (f)     That the Operating Agreement was in place in February 2005.

67.     Defendants concealed the fact that they never intended to perform according to their representations, including but not limited to those set forth above.

68.     Defendants concealed the fact that they planned to renege on the terms of the Operating Agreement.

69.     Said false representations were made by Defendants to Plaintiff during the course of Plaintiff's involvement with the Woodside Development and were material to Plaintiff.

70.     At the time Defendants made false representations to Plaintiff, Defendants knew of the falsity, or were ignorant of the truth, of the statements.

71.     Defendants intended and/or reasonably contemplated that their false representations to Plaintiff would be acted on by Plaintiff in the manner contemplated by Defendants.

72.     Plaintiff was ignorant of the falsity of Defendants' representations.

73.     Plaintiff reasonably and justifiably relied on the false representations made by Defendants.

74.     Plaintiff had a right to rely on the false representations made by Defendants.

75.     As a direct and proximate result of Defendants' false representations, Plaintiff has suffered damages in an amount to be proved at trial.

76.     It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT TWO
### Fraudulent Inducement
### (All Defendants)

77.     Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

78.     Defendants knowingly and intentionally induced Plaintiff to assign certain interests in the Woodside Development to Defendant 474 Club by making material false representations to, and/or concealing material information from, Plaintiff, as previously alleged, when they had a duty to disclose said concealed facts.

79.     Defendants knowingly and intentionally induced Plaintiff to enter into the Operating Agreement with Defendant 474 Club.

80.     Defendants knowingly and falsely induced Plaintiff to enter into an agreement to work together to develop the Woodside Development.

81.     Defendants knowingly and falsely induced Plaintiff to agree to assign property rights to Defendant 474 Club.

82.     The representations and concealments previously alleged include, but are not limited to, the following:

   (a)     The representation that Plaintiff and Defendant 474 Club had an agreement that Plaintiff and Defendant 474 Club would jointly develop the Woodside Development Project, that Plaintiff would serve as project administrator throughout the course of the Project at a rate of $4,000 per month, that Plaintiff would receive a $75,000 development/consulting fee, and that Plaintiff would receive a percentage of the Project's cash flow; and

   (b)     The concealed fact that Defendants had no intention of abiding by their agreements with Plaintiff and that they intended to take control of the Project for their sole benefit.

83.     Plaintiff reasonably and justifiably relied on the misrepresentations or concealments by Plaintiff in agreeing to assign certain interests by Plaintiff in the Woodside Development to Defendants and to enter into the Operating Agreement.

84.     The misrepresentations and concealments by Defendants were a material part of the decision by Plaintiff to assign certain of his interests in the Woodside Development to Defendants and to enter into the Operating Agreement.

85.     Had Plaintiff known of the misrepresentations and/or concealments made by Defendants, Plaintiff would not have assigned certain interests held by him in the Woodside Development to Defendants and would not have entered into an Operating Agreement.

86.     As a result of Defendants' fraudulent inducement, Plaintiff has suffered damages in an amount to be proved at trial.  In the alternative, Plaintiff is entitled to rescind his assignment to Defendants of said interests in the Project.

87.     It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT THREE
### Constructive Fraud
### (All Defendants)

88.     Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

89.     As a result of the representations and concealments concerning the Operating Agreement and other facts alleged, Plaintiff was in a relationship of confidence and trust with Defendants that constituted a form of confidential relationship or technical fiduciary relationship, and Defendants were under a legal or equitable duty to avoid deceiving Plaintiff or abuse such relationship.  Based upon this relationship, and also upon the fact that Defendants dealt with

Plaintiff from a position of superior knowledge, Defendants had a duty to disclose to Plaintiff all facts material to their transactions with Plaintiff.

90.    Defendants knowingly and intentionally failed to disclose all material facts of which they were aware to Plaintiff in their dealings with Plaintiff concerning the Woodside Development Project with the intent that the non-disclosure of said material facts be relied upon by Plaintiff.  These material facts include, but are not limited to, the following:

    (a)    That Defendants intended Plaintiff to jointly develop Woodside with the Defendants;

    (b)    That Plaintiff would serve as the project administrator for the Woodside Development Project throughout the entire course of development; and

    (c)    That Plaintiff would receive the agreed-upon percentage of cash flow from the Project.

91.    The existence of said non-disclosed material facts was not known and was not discoverable by Plaintiff

92.    Plaintiff reasonably relied upon the non-disclosure of said material facts, and had a right to rely thereon.

93.    As a direct and proximate result of the constructive fraud committed by Defendants, Plaintiff has sustained damages in an amount to be proven at trial.

94.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and as a result thereof Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT FOUR
### Breach of Contract – Operating Agreement
### (474 Club)

95.     Plaintiff hereby realleges each and every allegation in each and every foregoing

paragraph above as if set forth in full herein, and further alleges the following as an additional

claim and cause of action against Defendant 474 Club.

96.     Plaintiff and Defendant 474 Club entered into the Operating Agreement described

above.

97.     Defendant 474 Club entered into an agreement with Plaintiff to work together to

develop the Woodside Development.

98.     Defendant 474 Club materially breached the Operating Agreement through,

among other things, the conduct described above.

99.     Defendant 474 Club breached the agreement in bad faith.

100.    As a result of Defendant 474 Club's breach of the Operating Agreement, Plaintiff

has been damaged in an amount to be proved at trial.

101.    It has been necessary for Plaintiff to retain counsel to defend his interest in the

above entitled litigation and to pursue the claims as described herein and, as a result thereof,

Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the

Court deems just and proper.

## COUNT FIVE
### Breach of Contract – Project Administration Agreement
### (474 Club)

102.    Plaintiff hereby realleges each and every allegation in each and every foregoing

paragraph above as if set forth in full herein, and further alleges the following as an additional

claim and cause of action against Defendant 474 Club.

103.    An agreement existed between Defendant 474 Club and Plaintiff that Plaintiff would be the Project Administrator for the Woodside Development ("Project Administration Agreement") for the duration of the Woodside Development.

104.    Defendant 474 Club materially breached the Project Administration Agreement by refusing to allow Plaintiff to act as the Project Administrator for the Woodside Development.

105.    Defendant 474 Club breached the agreement in bad faith.

106.    As a result of Defendant 474 Club's breach of the Project Administration Agreement, Plaintiff has been damaged in an amount to be proved at trial.

107.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendant 474 Club in such amounts as the Court deems just and proper.

## COUNT SIX
### Breach of Assignment Agreement
### (474 Club)

108.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendant 474 Club.

109.    Plaintiff and Defendant 474 Club entered into an agreement whereby Plaintiff agreed to assign his interest in the Woodside escrows and Purchase Agreements to Defendant 474 Club in exchange for Defendant 474 Club's agreement that Plaintiff would be a joint developer of the Woodside Development pursuant to the terms of the Operating Agreement.

110.    In exchange for the assignment, Defendant 474 Club agreed to work with Plaintiff to form a partnership or joint enterprise to develop the Woodside Development.

FIRST AMENDED COMPLAINT AND JURY DEMAND – PAGE 22
18617-001  176924_5

111.    Defendant 474 Club materially breached the agreement by refusing to allow Plaintiff to serve as a joint developer of the Woodside development pursuant to the terms of the Operating Agreement.

112.    Defendant 474 Club breached the agreement in bad faith.

113.    As a result of Defendant 474 Club's breach of the agreement, Plaintiff has been damaged in an amount to be proved at trial.

114.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above-entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendant 474 Club in such amounts as the Court deems just and proper.

## COUNT SEVEN
### Breach of Duty of Good Faith and Fair Dealing
### (474 Club)

115.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendant 474 Club.

116.    There is implied in the Agreements between Defendant 474 Club and Plaintiff a covenant of good faith and fair dealing on the part of Defendant 474 Club to cooperate with Plaintiff so that Plaintiff may obtain all benefits available to it under the Agreements.

117.    Through the actions alleged above, Defendant 474 Club have materially breached the covenant of good faith and fair dealing, in that they violated or nullified Plaintiff's rights and benefits under the Agreements.

118.    As a direct and proximate result of Defendant 474 Club's breach of the covenant of good faith and fair dealing, Plaintiff has sustained injury and damage in an amount to be proven at trial.

119.    It has been necessary for Plaintiffs to retain counsel to defend their interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendant 474 Club in such amounts as the Court deems just and proper.

## COUNT EIGHT
### Breach of Fiduciary Duties
### (All Defendants)

120.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

121.    Plaintiff imposed special confidence in Defendants, who, in equity and good conscience, were bound to act in good faith and with due regard to the interest of Plaintiff, such that a fiduciary relationship existed between Plaintiff and Defendants.

122.    Defendants, as a result of their fiduciary relationship with Plaintiff, were under an obligation to be truthful, whether stating matters of fact or opinion, and Plaintiff had the right to rely on the statements by Defendants.

123.    Plaintiff trusted and relied upon the representations made by Defendants with respect to the Woodside Development.

124.    Plaintiff placed his trust and confidence in Defendants' representations and promises to, among other things, include Plaintiff in the Woodside Development pursuant to the terms of the Operating Agreement.  Thus, Defendants were in a superior position to Plaintiff, and

through such position were able to exercise influence over Plaintiff, who had reposed special trust and confidence in Defendants.

125.    Defendants knew or had reason to know that Plaintiff was placing his trust and confidence in Defendants' representations and promises provided in connection with the Woodside Development.

126.    As a result of this fiduciary duty, Defendants were obligated to use the utmost care in disclosing to Plaintiff material information important for someone in the position of Plaintiff to know.

127.    Defendants breached their fiduciary obligations to Plaintiff by misrepresenting, concealing, or by failing to fully, fairly, and timely disclose material information to Plaintiff, including, but not limited to, Defendants' intentions to exclude Plaintiff from the Woodside Development after Plaintiff assigned his interests in the Woodside Development to Defendants.

128.    Because Plaintiff was not properly informed of these matters, Plaintiff was unable to take actions that would have allowed him to be actively involved in, and receive considerable financial benefit from, the Woodside Development.

129.    As a result of Defendants' breach of their fiduciary obligations, Plaintiff has been damaged in an amount to be proven at trial.

130.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT NINE
### Civil Conspiracy
### (All Defendants)

131.   Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, incorporates by reference all other causes of action, and further alleges the following against Defendants.

132.   Defendant White conspired with Defendants for his own personal gain, including but not limited to payment at the time of escrow or compensation through other projects with Defendants.

133.   Defendant Lamberson conspired with Defendants for his own personal gain, including but not limited to compensation paid to him by Defendant 474.

134.   Pursuant to the conspiracy, Defendants were acting outside of their authority as agents and were knowingly committing intentional, wrongful acts.

135.   Defendants conspired to make the representations and concealments and to take the actions described above, and they intended by this conspiracy to defraud Plaintiff, to breach or cause the breach of fiduciary duties to Plaintiff, and to commit the other wrongful acts alleged.

136.   As a result of the conspiracy among Defendants, Plaintiff has suffered actual damages in an amount to be proven at trial.

137.   It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT TEN
### Equitable Estoppel
### (All Defendants)

138.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

139.    Defendants made false representations to and/or concealed material facts from Plaintiff, with actual or constructive knowledge of the truth.

140.    Plaintiff did not and could not have discovered the truth.

141.    Defendants intended for Plaintiff to rely upon Defendants' misrepresentations and/or concealments.

142.    Plaintiff relied upon the misrepresentations or concealments by Defendants to his prejudice.

143.    As a result, Plaintiff has suffered detriment.

144.    As a result of Defendants' misrepresentations and/or concealments of material fact, Plaintiff has suffered actual damages in an amount to be proven at trial.

145.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT ELEVEN
### Promissory Estoppel
### (All Defendants)

146.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

147.    Defendants made numerous promises to Plaintiff regarding his future involvement in the Woodside Development, including but not limited to promises regarding his ability to recover financial gains from the Woodside Development in accordance with the agreed upon terms of the Operating Agreement.

148.    Plaintiff relied upon the specific promises by Defendants.

149.    Plaintiff has sustained substantial economic loss as a result of his reliance on the specific promises by Defendants.

150.    The loss to Plaintiff was or should have been foreseeable by Defendants.

151.    As a result of Defendants' actions, Plaintiff has suffered detriment.

152.    Plaintiff's reliance on the promises by Defendants was reasonable.

153.    As a result of Plaintiff's reliance on the specific promises by Defendants, Plaintiff has suffered actual damages in an amount to be proven at trial.

154.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT TWELVE
### Quasi Estoppel
### (All Defendants)

155.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

156.    Defendants, through the wrongful conduct described above, gained an advantage for themselves.

157.    Defendants, through the wrongful conduct described above, produced a disadvantage to Plaintiff and/or induced Plaintiff to change his position.

158.    It would be unconscionable to allow Defendants to maintain a position which is inconsistent with the one in which they accepted a benefit.

159.    As a result of Defendants' wrongful conduct, Plaintiff has suffered detriment and actual damages in an amount to be proven at trial.

160.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## COUNT THIRTEEN
### Quantum Meruit
### (All Defendants)

161.    Plaintiff hereby realleges each and every allegation in each and every foregoing paragraph above as if set forth in full herein, and further alleges the following as an additional claim and cause of action against Defendants.

162.    Plaintiff has conferred a benefit upon Defendants that has value.

163.    Defendants have appreciated the benefit conferred upon them by Plaintiff.

164.    It would be inequitable for Defendants to retain the benefit conferred upon them by Plaintiff without paying Plaintiff the value thereof.

165.    As a result of Defendants failure to compensate Plaintiff for the value of the benefit conferred on Defendants, Plaintiff has suffered damages in an amount to be proved at trial.

166.    It has been necessary for Plaintiff to retain counsel to defend his interest in the above entitled litigation and to pursue the claims as described herein and, as a result thereof, Plaintiff requests an award of costs and attorneys fees against Defendants in such amounts as the Court deems just and proper.

## ATTORNEY FEES

167.    Plaintiff has been required to obtain the assistance of counsel to assist in the prosecution of this matter, and has retained the services of Greener Banducci Shoemaker P.A., and has agreed to pay said attorneys a reasonable fee.  Plaintiff is entitled to recover his reasonable costs and attorneys fees incurred in the prosecution of this matter pursuant to Rule 54, Idaho Rules of Civil Procedure, and Idaho Code, Sections 12-120, 12-121 and 48-608, or other applicable law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable pursuant to Rule 38(b) of the Idaho Rules of Civil Procedure, and will not stipulate to less than twelve (12) jurors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    A judgment declaring that Defendants breached agreements with the Plaintiff;

2.      That Plaintiff be awarded appropriate equitable relief;

3.      That the Court award Plaintiff damages to be proven at trial;

4.      That the Court declare that the Defendants take nothing;

5.      For an Order awarding Plaintiff his reasonable attorneys' fees and costs pursuant

to Rule 54, Idaho Rules of Civil Procedure, and Idaho Code, Sections 12-120, 12-121 and 48-

608, or other applicable law; and

6.      For such other further relief, at law and in equity, as the Court deems just and

proper.

DATED this 27th day of November, 2006.

GREENER BANDUCCI SHOEMAKER P.A.

Richard H. Greener
Erik F. Stidham
Scott E. Randolph
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT AND JURY DEMAND – PAGE 31
18617-001  176924_5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of November, 2006, a true and correct copy of the within and foregoing instrument was served upon:

Eugene A. Ritti, Esq.                      [ ]  by U.S. Mail
Jason D. Scott, Esq.                       [ ]  by Hand Delivery
HAWLEY TROXELL ENNIS & HAWLEY LLP          [ ]  by Facsimile
877 Main Street, Suite 1000                [ ]  by Overnight Delivery
P. O. Box 1617                             [X]  by ECF Filing
Boise, Idaho  83701-1617


Albert P. Barker, Esq.                     [ ]  by U.S. Mail
BARKER ROSHOLT & SIMPSON LLP               [ ]  by Hand Delivery
1010 W. Jefferson, Suite 102               [ ]  by Facsimile
P. O. Box 2139                             [ ]  by Overnight Delivery
Boise, Idaho  83701-2139                   [X]  by ECF Filing


Richard H. Greener
Erik F. Stidham
Scott E. Randolph


FIRST AMENDED COMPLAINT AND JURY DEMAND – PAGE 32
18617-001  176924_5